UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
UNITED STATES OF AMERICA      )
                              )
                              )    CRIMINAL NO. 05-10059-DPW
          v.                  )
                              )
                              )
CHAD BENJAMIN,                )
                              )
          Defendant.          )
```

**GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANT'S MOTION TO SUPPRESS EVIDENCE**

The United States of America, by and through its attorneys, Michael J. Sullivan, United States Attorney, and Assistant U.S. Attorney Antoinette E.M. Leoney, submits this memorandum of law in opposition to Defendant's Motion to Suppress Evidence in the above-captioned case.

Defendant Chad Benjamin ("Benjamin") argues for the suppression of all physical evidence, including a .380 caliber Smith and Wesson handgun loaded with six rounds of ammunition, found on his person by Officers of the South Coast Anti-Crime Team ("S.C.A.T.") on December 16, 2004. Benjamin asserts that the evidence obtained by the police was the result of an illegal stop and warrantless search that was unsupported by reasonable suspicion. See Def.'s Motion to Suppress at 1. As such, he argues, all resulting evidence should be suppressed.

Benjamin's arguments, however, are unsupported by both the facts and the governing case law. The officers' conduct, in

1

approaching Benjamin in the Package store and asking him for his name and identification, did not constitute a seizure and thus the Fourth Amendment was not initially implicated here. Moreover, even if, as Benjamin puts forth, he was seized from the inception of the encounter, his seizure was a valid <u>Terry</u> stop supported by reasonable, articulable suspicion.  Additionally, Detective Michael Grundy's ("Det. Grundy") pat-down of Benjamin's sweatshirt pocket was within the scope of the valid stop because, based on Benjamin's sudden hand movements in the area of his sweatshirt pocket, Det. Grundy reasonably believed that Benjamin had a weapon.

Needless to say, this argument fails because the seizure of Benjamin did not occur until he was physically restrained by Det. Grundy, <u>see</u> <u>United States v. Hodari D.</u>, 499 U.S. 621, 626 (1991), and the seizure occurred after Det. Grundy had a reasonable suspicion to believe that Benjamin was in unlawful possession of a firearm. <u>See</u> <u>Terry v. Ohio</u>, 392 U.S. 1, 30 (1968).

Because the officer's brief encounter with Benjamin in this case is precisely the type of encounter permitted under <u>Terry v. Ohio</u>, Benjamin's motion to dismiss should be denied by this court.

FACTUAL SUMMARY[1]

This case has its origin in a large scale investigation conducted by S.C.A.T. in 2004.  S.C.A.T., a multi-jurisdictional task force, was concerned with targeting and apprehending individuals engaged in illicit criminal activities in the jurisdictions of the participating agencies.[2]  (See Exhibit A).  During the course of their investigation, members of S.C.A.T. undertook undercover firearm and drug purchases from various individuals, including Jesse Teixeira, but not Benjamin, in the Taunton, MA, area.  By December 16, 2004, a number of state arrest warrants had been issued as a result of the investigation and S.C.A.T. was prepared to start making arrests.  Because of the large number of arrest warrants that were issued, members of S.C.A.T. split up into teams consisting of two to four members each to execute the warrants on December 16, 2004.  One such team consisted of Chief Jack O'Neil ("Chief O'Neil"), Detective James Dykus ("Det. Dykus"), and Det. Grundy.  Det. Grundy, the Task Force Coordinator, had prepared all of the warrants that were to be executed that day and was familiar with each of the targeted

---

[1] The factual summary is based on the exhibits attached hereto, which are denoted here as Exhibits A through E.  The government also anticipates that these facts will be elicited at any suppression hearing, as well as, at trial.

[2] In addition to the Taunton Police Department, whose actions are at issue in this case, jurisdictions participating in S.C.A.T. included Dighton, Somerset, Seekonk, Swansea, Rehoboth, and Bristol.

individuals.  One of these individuals, Jesse Teixeira
("Teixeira"), lived at 66 Cohannet Street in Taunton and Det.
Grundy knew Teixeira had an outstanding arrest warrant resulting
from the S.C.A.T. investigation that was to be executed by
another team.  (See Exhibit B).  As Det. Grundy's team drove by
Teixeira's home at 66 Cohannet Street, they saw two males walking
down the driveway.  (See Exhibit D).  One of the men was similar
in height, weight and build to Teixeira but he was wearing a
hooded sweatshirt covering his head and face, so the officers
were unable to determine his identity.  Id.  From their car, the
officers observed the two men walk down the street and enter
Egan's Package Store located at 48 Cohannet Street.  Id.
Believing that the man with the hooded sweatshirt over his head
could be Teixeira and not wanting him to escape arrest, the
officers decided to approach the two men to determine their
identity.  The officers then parked their car and entered Egan
Package Store at approximately 3:30 p.m.  (See Exhibit D).

    At the time they entered the store, Chief O'Neil, Det.
Dykas, and Det. Grundy were wearing police raid jackets and had
their badges exposed.  Id.  They approached the two men, who had
their backs to them, and asked them for their names and some
identification.  (See Def.'s Motion at 2).  One of the men, Edson
Miranda ("Miranda"), produced identification.  Id.  The other
man, later identified as Benjamin, did not give his name but

stated that he had left his identification in the car.  Id.
Since the officers knew the two men had traveled to the package
store on foot, they asked Benjamin where his car was located, and
he said it was outside.

At that point, Benjamin placed his hand over the front lower
part of his sweatshirt and made a movement as if he was shifting
the sweatshirt's front pocket.  Det. Grundy observed a "large
bulge" in the area of Benjamin's hands which he suspected was a
gun.  (See Exhibit D).  Det. Grundy then ordered Benjamin to put
his hands up and he proceeded to pat the sweatshirt pocket.  Id.
Knowing "immediately" that the object was a handgun, Det. Grundy
yelled "Gun!" to the other officers, brought Benjamin to the
floor, and removed a Smith & Wesson .380 caliber handgun loaded
with six rounds of ammunition from Benjamin's sweatshirt pocket.
Id.  Miranda, was then also ordered to the floor.  See Id.  After
Benjamin was handcuffed and turned over, the officers found a
large bag of crack cocaine laying on the floor between Benjamin
and Miranda.  Id.  Both Benjamin and Miranda were then placed
under arrest.

Benjamin's booking memo describes him as being 5 foot 11
inches tall, weighing 190 pounds, and having a medium build and a
medium brown complexion.  (See Exhibit C).  In the warrant issued
for his arrest, Teixeira was described as being six feet tall,
weighing 170 pounds, and having a medium build and a medium

complexion.  (See Exhibit B).

Benjamin is not unfamiliar with the criminal justice system. He has a long history of encounters and arrests dating as far back as 1989.  (See Exhibit E).

ARGUMENT

The handgun seized from the person of Defendant Chad Benjamin on December 16, 2004 should not be suppressed because both the officers' initial encounter with Benjamin and the subsequent pat down of his sweatshirt pocket were valid under the Fourth Amendment.  When the officers initially approached Benjamin in Egan's Package Store and asked him for his name and identification, Benjamin was free to leave and thus was not seized for Fourth Amendment purposes.  Even assuming, arguendo, that Benjamin was seized from the inception of the encounter, the seizure was a valid Terry stop because the officers had reasonable suspicion to believe that Benjamin was actually Jesse Teixeira, for whom there was an outstanding arrest warrant.  Det. Grundy's pat down of Benjamin's sweatshirt pocket was within the proper scope of this valid stop because Det. Grundy reasonably believed that the bulge in Benjamin's pocket was a weapon.

Because there is no factual or legal support for Benjamin's claim that his stop and pat-down search was unreasonable, his motion to suppress should be denied.

I.   THE OFFICER'S INITIAL ENCOUNTER WITH BENJAMIN IN THE PACKAGE
     STORE DID NOT CONSTITUTE A SEIZURE UNDER THE FOURTH

AMENDMENT.

For Fourth Amendment purposes, a seizure occurs when a police officer restrains an individual's freedom to walk away from an interaction. See Terry v. Ohio, 392 U.S. 1, 16 (1968). It has been well established that the Fourth Amendment is not implicated by an officer merely approaching and questioning a individual in public as long as they are not detained against their will and are free to leave. United States v. Drayton, 536 U.S. 194, 200-201 (2002)("[l]aw enforcement officers do not violate the Fourth Amendment's prohibition of unreasonable seizure merely by approaching individuals on the street or other public places if they are willing to listen"); Florida v. Bostick, 501 U.S. 429, 434 (1991) ("a seizure does not occur simply because a police officer approaches an individual and asks a few questions"). An individual is not considered "seized" under the Fourth Amendment unless, considering the totality of the circumstances, the encounter is so coercive and intimidating that a reasonable person would have believed that they were not free to leave. INS v. Delgado, 466 U.S. 210, 216 (1984); United States v. Mendenhall, 446 U.S. 544, 554 (1980). The Court in Mendenhall gave examples of circumstances that might indicate a seizure, including the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the individual, and the use of language or tone of voice

7

indicating that compliance with the officer's request might be compelled. Id. at 555. In Mendenhall, however, the Court found that no seizure of the defendant had occurred because the events took place in public, the officers were not wearing uniforms and displayed no weapons, they did not summon the defendant to their presence but instead approached her and identified themselves, and they requested rather than demanded the defendant's identification. Id.

Here, as in Mendenhall, the officers' initial encounter with Benjamin did not constitute a seizure. The encounter took place during daylight hours in a public place. The officers were wearing police raid jackets and had their badges exposed, but they did not have their weapons drawn. Drayton, 536 U.S. at 204 ("the presence of a holstered firearm. . .is unlikely to contribute to the coerciveness of an encounter absent active brandishing of the weapon"). Additionally, the officers did not summon Benjamin and Miranda to them; rather, they approached the two men and requested their names and identification. The officers did not physically touch either Benjamin or Miranda at this point nor did they speak in a tone indicating that a response was required. The officers never told Benjamin or Miranda that they were not free to leave and they never prevented them from leaving. Viewed in light of the totality of the circumstances, the circumstances of the initial encounter in the

8

package store did not constitute a seizure.

In the recent case of United States v. Smith, 423 F.3d 25 (1st Cir. 2005), the First Circuit, relying on facts similar to those in the instant case, held that there was no seizure of the defendant during a street encounter with police officers until he was placed under arrest. In Smith, two uniformed officers approached the defendant, who was sitting on a 2-3 foot wall behind a sidewalk, at approximately 1:30 p.m. Id. at 26. There was a house with a chain-link fence behind the defendant and a telephone pole in front of him which the officers stood on either side of as they approached the defendant. Id. at 27. The officers, who were familiar with "locals" in the area but did not recognize the defendant, asked the defendant for his name and identification. Id. The defendant produced identification and advised the officers that he had an outstanding arrest warrant, which was then confirmed by the officers. Id. The officers arrested the defendant, and during a search subsequent to his arrest, they found a loaded handgun in his waistband. Id.

The First Circuit, in finding that there was no seizure in Smith prior to the defendant's arrest, relied on many of the same factors that are also present here. In Smith, as in this case, the officers were in uniform but did not unholster their weapons. Id. at 30. The officers in Smith did not accuse the defendant of any crime or question him about a specific event. Id.

9

Immediately upon approaching the defendant, the officers asked
him for his name or identification.  Id.  As the court stated,
"such a non-threatening request does not elevate an otherwise
consensual encounter between a citizen and the police into a
seizure."  Id.; See also Delgado, 466 U.S. at 216 ("interrogation
relating to one's identity or a request for identification by the
police does not, by itself, constitute a Fourth Amendment
seizure").

     Furthermore, the Court in Smith found that the officers did
not restrict the defendant's freedom of movement, even though
their positioning on either side of the telephone pole may have
created the illusion of being restrained.  Smith at 30.  The
court, stating that the officers "stood where they had to", noted
that physical limitations on an individual's movement independent
of police conduct do not turn an encounter with the police into a
restraint of liberty.  Id. (citing Bostick, 501 U.S. at 436).
Similarly, in this case, the fact that three officers approached
Benjamin in a small, crowded store does not turn the encounter
into a seizure.  If the officers were standing near the door when
they approached Benjamin, it was because there was no other place
for them to stand and not because they were trying to restrict
Benjamin's movement or prevent him from leaving.

     When viewed in light of the totality of the circumstances,
an objectively reasonable person would have felt free to

10

terminate the encounter with the officers in the package store. Because the defendant was not seized under the Fourth Amendment when the officers first approached him, the encounter was valid at its inception.

II. EVEN IF THE OFFICER'S INITIAL ENCOUNTER WITH BENJAMIN DID CONSTITUTE A SEIZURE, IT WAS A VALID <u>TERRY</u> STOP SUPPORTED BY REASONABLE SUSPICION.

Even if, as Benjamin argues, he was seized from the outset of the encounter in the package store, the encounter began as a facially valid <u>Terry</u> stop. The officers had reasonable, articulable suspicion that Benjamin was actually Teixeira, who had an outstanding warrant for drug distribution that was to be executed that day. As such, the officers were justified in approaching and questioning Benjamin briefly to determine his identity.

In <u>Terry v. Ohio</u>, the Supreme Court held that an officer can stop and briefly detain an individual without probable cause for investigative purposes if the officer has a reasonable suspicion that the individual is engaged in criminal activity. 392 U.S. at 30; <u>United States v. Sokolow</u>, 490 U.S. 1, 7 (1989). The suspicion needed to justify a brief stop does not need to be severe because the intrusion is so limited. <u>United States v. Velez-Saldana</u>, 252 F.3d 49, 52 (1st Cir. 2001). To establish reasonable suspicion, officers cannot rely on hunches; they must be able to point to specific and articulable facts which, taken

together with rational inferences, justified the investigatory
stop. Terry at 22. Evaluating the reasonableness of an
investigatory stop involves two separate inquiries; first,
whether the officer's actions were justified at their inception,
and second, whether the scope of the stop was reasonable under
the circumstances. Id. at 20; United States v. Maguire, 359 F.3d
71, 76-77 (1st Cir. 2004). The validity of a stop under Terry is
to be evaluated in light of the totality of the circumstances.
Maguire. at 76; Sokolow at 9.

Here, an analysis of the totality of the circumstances
surrounding Benjamin's stop indicates that it was a valid Terry
stop supported by reasonable suspicion. Specifically, the
officers had a reasonable suspicion that Benjamin was in fact
Teixeira, who the officers knew had an outstanding arrest
warrant. When the officers saw Benjamin and Miranda walk down
the driveway from Teixeira's house, they did not know who either
of the men were. Additionally, the officers were unable to
determine Benjamin's identity by looking at him because he was
wearing a hooded sweatshirt that covered his face and head. At
that point, the officer presumed that Benjamin could have been
Teixeira because he was seen coming from Teixeira's house
and because he was similar in appearance [height, weight and
build] to Teixeira. Benjamin attempts to emphasize their
dissimilarity in appearance by pointing out that Teixeira has

12

long bushy hair while Benjamin has a shaved head.  Def.'s Motion
at 2.  However, since the officers could not see Benjamin's head
because it was covered by a hood, this argument is wholly without
merit.

It is of no matter here that, at the outset of the
encounter, the officers were not investigating current criminal
activity.  In United States v. Hensley, the Supreme Court held
that if the police have a reasonable suspicion that a person they
encounter is wanted in connection with a completed felony, then a
Terry stop can be made to investigate that suspicion. 469 U.S.
221, 230 (1985).  Here, the purpose of the Terry stop was to
prevent Teixeira from escaping arrest.  The situation in this
case falls squarely into the type of situation considered by the
Court in Hensley: "where the police have been unable to locate a
person suspected of involvement in a past crime, the ability to
briefly stop that person, ask questions, or check identification
. . .promotes the strong government interest in solving crimes
and bringing offenders to justice." Id.  While it is true that
the officers who approached Benjamin were not part of the team
assigned to execute Teixeira's warrant, they were merely trying
to prevent Teixeira from escaping arrest, and the officers could
have arrested Teixeira based on their knowledge of the
outstanding warrant.

Given that the officers knew Teixeira had an outstanding

13

warrant and that they saw a man similar in appearance to Teixeira walking away from his house, they had reasonable, articulable suspicion to approach Benjamin and determine his identity.  Thus, the officers' investigatory stop of Benjamin was justified at its inception and the first inquiry under <u>Terry</u> is satisfied.

The second inquiry under <u>Terry</u> is also satisfied here because the scope of the stop was reasonable under the circumstances.  The officers approached Benjamin and questioned him briefly to determine whether or not he was Teixeira.  This is exactly the type of conduct that is allowed under <u>Terry</u>.  <u>Terry</u> at 27; <u>United States v. Campa</u>, 234 F.3d 733, 737 ("a police officer with reasonable suspicion of criminal activity may detain a suspect briefly for questioning aimed at confirming or dispelling his suspicions").

Moreover, Det. Grundy's pat-down of Benjamin's sweatshirt was also within the scope of a reasonable investigatory stop.  In addition to permitting a brief investigatory stop on the basis of reasonable suspicion, <u>Terry</u> also permits a limited search for weapons based on a reasonable belief that an individual is armed and dangerous.  392 U.S. at 30; <u>United States v. Campa</u>, 234 F.3d 733, 737 (1st Cir. 2000).  The search must be limited to "that which is necessary for the discovery of weapons," <u>Terry</u> at 26, and it typically consists of a limited patting of the outer clothing of the suspect.  <u>Campa</u> at 737.

14

After Benjamin made the movement towards the front of his sweatshirt and Det. Grundy saw a large bulge there, Det. Grundy was warranted in his belief that Benjamin was armed and thus the pat down was justified.  Courts addressing factual situations similar to the one in the instant case have found that a pat-down was warranted.  United States v. Trullo; 809 F.2d 108, 113 (1st Cir. 1987) (officer was justified in doing a limited search of the defendant's outer clothing after noticing a bulge in his pocket); Pennsylvania v. Mimms, 434 U.S. 106, 112 (1977) (bulge in defendant's jacket permitted the officer to conclude that the defendant was armed).  Additionally, the scope of the search for weapons was precisely within what is permitted under Terry.  Det. Grundy patted down Benjamin's outer clothing only in the area where he suspected the weapon was concealed.

The above reasons, taken within the framework of a totality of the circumstances, demonstrate that reasonable suspicion existed and thus the officer's investigatory stop and pat-down search of Benjamin was valid under Terry.  As such, the stop was justified from its inception and the loaded handgun found on Benjamin as a result of the pat-down is admissible.

<u>CONCLUSION</u>

WHEREFORE, for the above reasons the government respectfully

requests that this Court deny the Defendant's Motion to Suppress Evidence.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By:

/s/Antoinette E.M. Leoney
ANTOINETTE E.M. LEONEY
Assistant U.S. Attorney

Date: November 14, 2005

CERTIFICATE OF SERVICE

Suffolk, ss.                     Boston, Massachusetts
                                 November 14, 2005

    I, Antoinette E.M. Leoney, Assistant U.S. Attorney, certify that I caused a copy of the foregoing to be served by electronic court filing notice to Kevin J. Reddington, Esq., Law Offices of Kevin J. Reddington, Williamsburg Square, Suite 203, 1342 Belmont Street, Brockton, MA 02301.

/s/Antoinette E.M. Leoney
ANTOINETTE E.M. LEONEY
Assistant U.S. Attorney

# EXHIBIT  A

## MEMORANDUM OF UNDERSTANDING
## AND AGREEMENT

## SOUTH COAST ANTI-CRIME TEAM (S.C.A.T.)

This Agreement is entered into by and between the undersigned municipal corporations and public agencies.

WHEREAS,  The undersigned parties are charged with the duty of enforcing the law and protecting their citizens from illegal activity; and

WHEREAS,  The parties recognize that the jurisdiction and authority of each is limited and that such limitations are detrimental in combating crime within their jurisdiction and/or boundaries; and

WHEREAS,  The parties recognize that certain law enforcement problems can be most effectively combated by the pooling of their resources and the joint exercise of their authorities and that the formation of a Multi-Jurisdictional Task Force  best effectuates these objectives;

NOW THEREFORE,  in consideration of the promises and terms contained herein and for further good and valuable consideration, the undersigned parties agree as follows:


I.    **PURPOSE AND MISSION**

The purpose of this Agreement is to create a multi-jurisdictional task force to be known as the South Coast Anti-Crime Team (hereinafter "Task Force") and to set forth the responsibilities of the participating agencies of the Task Force.

The mission of the South Coast Anti-Crime Team will be to significantly diminish criminal activity in the jurisdictions of the undersigned parties, to apprehend the responsible offenders and otherwise enforce the laws of the states of the participating agencies thereby increasing public safety.  Use of the Task Force concept is intended to ensure well coordinated law enforcement regionally and increase the flow of intelligence information among the participating agencies.

The Task Force will direct its primary enforcement efforts in the following areas:

A.    Covert and overt investigations concerning individuals engaged in illicit criminal activities in the jurisdictions of the participating agencies.

062

B.    Development of intelligence data regarding criminal activities in the jurisdictions of the undersigned agencies.

C.    The accumulation and maintenance of intelligence files regarding such criminal activities.

D.    Dissemination of intelligence data and activities to the appropriate federal, state and local law enforcement or prosecutorial agencies.

## II.    GOVERNING STRUCTURE OF TASK FORCE

A.    The parties agree that the Task Force shall be governed by a "Task Force Executive Council" comprised of the department head of each participating agency.  The Task Force Executive Council shall be responsible for the overall governance of the Task Force's operations including the selecting of investigative priorities and general operating procedures. The Executive Council shall also have the authority to approve or disapprove of any case plans for investigations, to approve the disbursements of any Task Force funds including grant funds, to make all decisions critical to the management of the Task Force and its investigation strategies and activities.

B.    Each member of the Executive Council shall have an equal vote in the conduct of its business.  One member of the council will be elected Chairman/Chairwoman and will remain in that capacity for one year.  The chairman/chairwoman shall be responsible for keeping all parties to the Agreement informed on all matters relating to the functions, expenditures, accomplishments and problems of the Task Force.  An election for chairman/chairwoman will occur each year of the Task Force's existence on the anniversary of the first election for Executive Council Chairman/Chairwoman.

C.    The Council will convene on a monthly basis to conduct business and review Task Force activities.  The chairman/chairwoman may call additional meetings as necessary.  All acts and decisions of the council shall be made by a vote of a majority of the members.  In emergency situations, the chairman/chairwoman may conduct a telephone poll of council members to resolve an issue.

## III.    OTHER ORGANIZATIONAL STRUCTURES OF TASK FORCE

A.    The parties agree that there shall be a "Task Force Coordinator" under the direction of the Executive Council.  The Task Force Coordinator shall act as principal liaison and facilitator between the Executive Council and the Task Force

members. The Task Force Coordinator shall be responsible for keeping the Executive Council informed of all matters relating to the functions, expenditures, investigations, business and problems of the Task Force. The Coordinator shall prepare monthly reports for the Executive Council which shall include but not be limited to a narrative of Task Force activities in that month, expenditures and receipts for the month and manpower hours used per department.

B.    The Task Force Coordinator shall have supervisory control of personnel assigned to the Task Force and shall be responsible for overall supervision of all pending investigations, use of funds, overtime verifications, time keeping responsibilities and submission of each member's time tabulations to their respective parent agency. The coordinator shall also be responsible for making personnel recommendations *ie* removal from Task Force participation, discipline, etc.

C.    The Task Force Coordinator shall be appointed by the Executive Council and shall serve at their will and pleasure. The Task Force Coordinator shall be an officer drawn from the ranks of the undersigned parties.

D.    The position of Task Force Coordinator shall be a part time position. The parent agency of the Task Force Coordinator shall be reimbursed by the Task Force for the hours worked by the Coordinator on Task Force business. The Task Force shall reimburse the parent agency out of any and all grant funds that the Task Force may be awarded or any monies donated to the Task Force by participating agencies.

E.    The parties agree that Task Force personnel shall be police officers or deputy sheriffs of the undersigned agencies. Such officers or deputies shall, prior to appointment, have been afforded appropriate training as required by law and may not be subject to any current or pending disciplinary action. Each of the undersigned parties shall be responsible for the selection of their own members of the Task Force and may assign any personnel to Task Force duties as they see fit or proper. Any party, in their discretion, may assign support or secretarial staff to the Task Force.

## IV.    EXPENSES AND COMPENSATION OF TASK FORCE PERSONNEL

Unless otherwise provided for in this Agreement, each of the undersigned parties shall be responsible for its own equipment costs and for providing the salaries, benefits and overtime costs for its personnel assigned to or participating in the Task Force. All compensation and other benefits enjoyed by officers in their own jurisdictions shall extend to the services they perform under this Agreement. The costs for all such

compensation and benefits shall be borne by the employees' own agencies and/or municipalities.

Each of the undersigned parties shall be solely responsible for the payment of sick leave, retirement benefits, worker's compensation or Section 111F benefits, medical and death benefits to its respective employees participating in the Task Force or its activities should such benefits become payable as a result of the employees' involvement in the Task Force. It is agreed that all employees while traveling to or returning from Task Force activities shall be deemed to be on active duty with their own employing agency or municipality for all purposes. No provision in this Agreement shall limit a party's right under either statute or law to seek compensation or reimbursement from third parties for any benefits paid by the party to any of its employees as a result of an injury or death of the employee caused by the acts or omissions of the third party.

## V.    COMMAND AND CONTROL

All personnel and equipment assigned to the Task Force or its activities shall be under the command and control of the Executive Council of the Task Force, or their designee.

Personnel and equipment provided to the Task Force by any of the undersigned parties may be recalled at any time by the respective undersigned parties in their sole discretion. Such recall, however, may not occur during the personnel and/or equipments' actual use in Task Force's activities so as not to jeopardize the safety of Task Force personnel and the completion of its mission/activities.

The parties acknowledge and agree that all Task Force records shall remain the property of the Task Force and shall not be withheld or taken by any of the undersigned parties without the express authorization of the Executive Council. Said records shall be maintained for the period specified in the public records law of the Commonwealth. Said records shall only be copied and/or distributed upon authorization of the Executive Council. The term "records" shall mean any and all records of the Task Force including written materials, photos, videos, audio tape, computer records and discs or other materials as defined by the public records law of the Commonwealth as a "public record" whether or not exempt from public disclosure.

## VI.    AUTHORITY AND POWERS OF TASK FORCE PERSONNEL

All personnel assigned to the Task Force or its activities shall be deemed to be continuing under the employment of their own jurisdiction and shall have all of the same powers, privileges, responsibilities, immunities from liability and exemption from laws,

065

ordinances or regulations conferred upon them as law enforcement officers in their own jurisdictions unless otherwise prohibited by law.

All officers assigned to the Task Force or its activities shall have the powers of police officers, including the power of arrest, in all jurisdictions of the undersigned parties.

All parties agree to do whatever is necessary to insure that all officers assigned to the Task Force or its activities have the powers of police officers, including the power of arrest, in all jurisdictions of the undersigned parties including but not limited to the appointment of all assigned officers as special police officers or deputy sheriffs in all jurisdictions of the undersigned parties.

The parties to this Agreement acknowledge and agree that their participation in the Task Force and its activities shall constitute a rendering of mutual aid as permitted by law including, but not limited to, *M.G.L. c. 40, Section 8G*. The parties acknowledge that this Agreement shall constitute an agreement under the aforementioned *M.G.L. c. 40, Section 8G*, and nothing in this Agreement shall limit the authority granted to police officers as described in *M.G.L. c. 41, Section 99*.

## VII.   TRAINING

Each participating agency or municipality shall be responsible for training, including training required by law, their own personnel according to their own individual budgets.

Additional training may be provided through the Task Force in the discretion of the Executive Council.

## VIII.   ASSET FORFEITURE

Proceeds derived from an asset forfeiture, under federal or state law, initiated as a result of an investigation or activity of the Task Force shall be divided as follows:

A.   Fifty percent (50%) of the proceeds from an asset forfeiture will be directed to the Task Force in order to fund its operations and activities.

B.   The remaining fifty percent (50%) of the proceeds shall be shared equally among the undersigned parties to this Agreement.

066

## IX.    BUDGET AND ACCOUNTING

The Executive Council and Task Force Coordinator shall be responsible for the accounting of Task Force receipts and expenditures and insuring compliance with all laws in this regard.

Any and all fiscal records, receipts and reports of the Task Force shall be readily available for examination by any of the undersigned parties or other agencies, and auditors required by law. All such records shall be maintained by the Task Force indefinitely, unless otherwise agreed by the parties.

If any of the undersigned parties applies for or is a signatory to a grant on behalf of or for the benefit of the Task Force, that party shall be responsible for the accounting and administering of that grant.

The Executive Council may apply for and seek any and all grant funds it deems proper and necessary. All such grant funds received shall be utilized in compliance with the terms, conditions and requirements of the granting body.

## X.    ANNUAL REPORT

On or before March 1st of each year during this Agreement's existence, the Executive Council, with the assistance of the Task Force Coordinator, shall prepare an annual report of activity. This request will summarize the preceding year's operation and shall include a section for statistical data. The report shall contain sufficient information to enable the Executive Council to reassess Task Force goals, objectives and activities and for use in grant applications.

## XI.    LIABILITY AND INDEMNIFICATION

For the purposes of liability and indemnification, all personnel assigned to or participating in the Task Force shall be deemed to be continuing under the employment of their own agency or municipality and acting within the scope of their employment, for all lawful purposes. All privileges and immunities from liability enjoyed by each party within its boundaries shall extend to its participation in the Task Force's activities outside of its boundaries.

Each of the undersigned parties agrees to indemnify, defend and hold harmless the other undersigned parties and their officials, officers, employees and servants from and against

damage which the other parties, their officials, officers, employees and servants may sustain, incur or be required to pay arising out of or in connection with claims for personal injury or damages of any kind resulting solely from any acts or omissions of their employees or officers while participating in Task Force activities and acting in the scope of their employment which constitute liability within the scope of *M.G.L. c. 258* including, but not limited to, negligent action or inaction, intentional torts, or any other acts or omissions which constitute a violation of the civil rights of any person under federal or state law.

By entering into this Agreement, none of the parties have waived its governmental immunity which may be extended to them by operation of law including limitation of damages.

Each party's indemnity obligation under this Article shall be reduced to the extent by which the liability, damages or expense results from the negligence or misconduct of employees, agents or servants of any other party to this Agreement.

## XII.   DURATION OF AGREEMENT AND TERMINATION

This Agreement shall remain in effect until terminated by all parties hereto upon a written memorandum setting forth the date of such termination. Any party may terminate their participation in this Agreement/Task Force by giving thirty (30) days written notice to all other parties of the Agreement. One or more parties' withdrawal from the Task Force shall not terminate this Agreement among the remaining parties.

## XIII.   SEVERABILTY

If any provisions of this Agreement is declared or found to be illegal, unenforceable or void, then all parties shall be released of all obligations under that provision. The remainder of this Agreement shall be enforced to the fullest extent possible or permitted by law.

## XIV.   WAIVERS

All conditions, covenants, duties and obligations contained in this Agreement can be waived only by written agreement. Forbearance or indulgence in any form or manner by any party shall not be construed as a waiver, nor in any way limit the legal or equitable remedies available to that party.

## XV.  CHOICE OF LAW

This Agreement shall be construed under and governed by the laws of the Commonwealth of Massachusetts. All parties agree to bring any federal or state legal proceedings arising under this Agreement, in a court of competent jurisdiction within the Commonwealth of Massachusetts. This paragraph shall not be construed to limit any rights a party may have to intervene in any action, wherever pending, in which the others are a party.

## XVI.  AMENDMENTS

No Amendment to this Agreement shall be effective unless it is in writing and signed by authorized representatives of all parties.

## XVII.  HEADINGS

The headings used herein are for reference and convenience only and shall not be a factor in the interpretation of this Agreement.

## XVIII.  PUBLICITY

Each party shall at all times obtain the prior written approval of the other parties before any of its officers, employees or officials during the term of this Agreement make any public statement or issue any material for publication, through any medium of communication, bearing on the activities, duties, work or policies of the Task Force and/or its personnel except that the Task Force Coordinator shall be authorized to communicate any information to other agencies or the public deemed necessary for Task Force activities or operations without the written approval of the parties to the Agreement. Furthermore, the Coordinator shall be authorized to answer news media requests or make press releases regarding the day to day activities of the Task Force. Should the Coordinator make such answers, he/she shall notify the chairman/chairwoman of the Executive Council as soon as possible thereafter. No other Task Force member shall be authorized to make any public statement or issue any material for publication on Task Force activities, duties, work or policies. Each of the undersigned parties shall notify their employees assigned to the Task Force of this restriction.

## XIV.  MULTIPLE COPIES

This Agreement is executed in several counterparts each of which shall be deemed to be an original copy of this Agreement and shall have the force and effect as such.

# THE COMMONWEALTH OF MASSACHUSETTS

## OFFICE OF THE
## BRISTOL COUNTY SHERIFF

**THOMAS M. HODGSON**
**SHERIFF**

400 Faunce Corner Road
North Dartmouth, MA 02747

TEL:  (508) 995-1311
FAX:  (508) 995-7835

August 16, 2004

Edward A. Flynn, Secretary of Public Safety
Commonwealth of Massachusetts
Executive Office of Public Safety
One Ashburton Place
Boston, MA  02108

Dear Mr. Secretary:

I am writing this letter of support on behalf of a multijurisdictional Southeastern Massachusetts Regional Planning Collaborative. Barnstable Sheriff James M. Cummings has requested the Bristol County Sheriff's Office collaboration in forming this multijurisdictional group in response to Byrne Grant funding for innovative approaches to criminal justice challenges. The Bristol County Sheriff's Office is fully committed to the success of this effort. I believe that this effort will meet many of the goals that your Office has established. It will be a regional effort intended to examine our current services and integrate what we learn into providing effective reentry services.

I am fully committed to participating in this program and look forward to working in conjunction with Sheriff Cummings and the other participants. Working together, the criminal justice, law enforcement, and social service agencies can evaluate the current use of reintegration services and identify common gaps, challenges, and barriers within our individual agencies and jurisdictions. Moving to address these challenges regionally will allow us to enhance our pool of resources much more than any single department or county correctional facility can do in isolation.

I look forward to participating in this collaborative and I look ahead to the benefits of offering regional aftercare services in Southeastern Massachusetts.

Please feel free to contact me directly for further comment.

Sincerely,

Thomas M. Hodgson,
Sheriff of Bristol County

Memorandum of Agreement/South Coast Anti-Crime Task Force

IN WITNESS WHEREOF, the parties execute this Agreement on the 12ᵗʰ day of August, 2004

## BRISTOL COUNTY SHERIFF'S OFFICE

Signed By: _____

Print Name: __Thomas M. Hodgson_____

Print Title: __Sheriff of Bristol County_____

Address: __400 Faunce Corner Road_____

__North Dartmouth, MA 02747_____

Telephone: __508-995-1311_____

071



# CITY OF TAUNTON
# POLICE DEPARTMENT

**CHIEF**
RAYMOND L. O'BERG

23 SUMMER STREET
TAUNTON, MA 02780
508-821-1471

August 16, 2004

Ms. Janet Connolly, Grant Manager
Executive Office of Public Safety
Programs Division
One Ashburton Place, Suite 2110
Boston, MA 02110

Dear Ms. Connolly:

The Taunton Police Department remains strongly committed to the South Coast Anti-Crime Task Force and acknowledges the matching requirements of the Edward Byrne Memorial Local Law Enforcement Assistance Grant Program. The Taunton Police Department along with the other departments will designate the 50 % matching funds to the South Coast Anti-Crime Task Force (SCAT). The source of the match will be drug forfeiture funds, department appropriated overtime funds, and department appropriated operating expenses.

The Taunton Police Department will continue to dedicate personnel, communications equipment, operational supplies, and other resources as needed. The Taunton Police Department will continue to work in conjunction with Chief James Smith and the other SCAT communities to coordinate investigative and enforcement efforts that are essential to the control of drugs, violence, gangs, illegal firearms, organized crime, and terrorism.

If you have any further questions with regard to the involvement of the Taunton Police Department in SCAT, please do not hesitate to contact me at 508-821-1471.

Sincerely,

Raymond O'Berg
Chief of Police

Edward Byrne Memorial State and Local Law Enforcement Assistance Formula Grant    FFY 04    August 12, 2004
Memorandum of Agreement/South Coast Anti-Crime Task Force

IN WITNESS WHEREOF, the parties execute this Agreement on the _____16'th____ day of August 2004.

**CITY OF TAUNTON**

Signed By:

Print Name:    Raymond O'Berg

Print Title:    Chief

Address:    23 Summer Street

            Taunton MA 02780

Telephone:    508-821-6471

**073**





# POLICE DEPARTMENT

### DIGHTON, MASSACHUSETTS
(508) 669-6711
FAX (508) 669-6740

August 16, 2004

Ms. Janet Connolly, Grant Manager
Executive Office of Public Safety
Programs Division
One Ashburton Place, Suite 2110
Boston, MA 02110

Dear Ms. Connolly:

The Dighton Police Department remains strongly committed to the South Coast
Anti-crime Task Force and acknowledges the matching requirements of the Edward
Byrne Memorial Local Law Enforcement Assistance Grant Program. The Dighton
Police Department along with the other departments will designate the 50% matching
Funds to the South Coast Anti-Crime Task Force (SCAT). The source of the match
will be drug forfeiture funds, department appropriated overtime funds, and
department appropriated operating expenses.

The Dighton Police Department will continue to dedicate personnel, communications
equipment, operational supplies and other resources as needed. The Dighton Police
Department will continue to work in conjunction with Chief James Smith and the
other SCAT communities to coordinate investigative and enforcement efforts that
are essential to the control of drugs, violence, gangs, illegal firearms, organized
crime and terrorism.

If you have any further questions with regard to the involvement of the Dighton Police
Department in SCAT, please do not hesitate to contact me at Dighton Police Department
508 669-6711.

Sincerely,

Robert L. MacDonald

Robert L. MacDonald
Chief of Police

RLM/klb

074

Edward Byrne Memorial State and Local Law Enforcement Assistance Formula Grant   FFY 04      August 12, 2004
Memorandum of Agreement/South Coast Anti-Crime Task Force

IN WITNESS WHEREOF, the parties execute this Agreement on the ___16th___ day of August, 2004.

## TOWN OF DIGHTON, MA

Signed By:      _Robert L. MacDonald_

Print Name:     Chief Robert L. MacDonald

Print Title:    Chief of Police

Address:        Dighton Police Department

                1551 Somerset Ave.

Telephone:      Dighton, MA  02715

075

August 12, 2004

Ms. Janet Connolly, Grant Manager
Executive Office of Public Safety
Programs Division
One Ashburton Place, Suite 2110
Boston, MA 02110

Dear Ms. Connolly:

The Somerset Police Department remains strongly committed to the South Coast Anti-crime Task Force and acknowledges the matching requirements of the Edward Byrne Memorial Local Law Enforcement Assistance Grant Program. The Somerset Police Department along with the other departments will designate the 50% matching funds to the South Coast Anti-Crime Task Force (SCAT). The source of the match will be drug forfeiture funds, department appropriated overtime funds, and department appropriated operating expenses.

The Somerset Police Department will continue to dedicate personnel, communications equipment, operational supplies, and other resources as needed.

The Somerset Police Department will continue to work in conjunction with the other SCAT communities to coordinate investigative and enforcement efforts that are essential to the control of drugs, violence, gangs, illegal firearms, organized crime, and terrorism.

If you have any further questions with regard to the involvement of the Somerset Police Department in SCAT, please do not hesitate to contact me at 508-679-2138

Sincerely,
Chief James M. Smith

076

Memorandum of Agreement/South Coast Anti-Crime Task Force

IN WITNESS WHEREOF, the parties execute this Agreement on the _____13th_____ day of August, 2004.

## TOWN OF SOMERSET

Signed By: _____

Print Name: ___ JAMES  M.  SMITH ___

Print Title: ___ CHIEF  OF  POLICE ___

Address: ___ SOMERSET  POLICE  DEPT. ___

___ 465  COUNTY  ST.,  SOMERSET,  MA  02726 ___

Telephone: ___ 508 - 679 - 2138. ___

077

August 12, 2004

Ms. Janet Connolly, Grant Manager
Executive Office of Public Safety
Programs Division
One Ashburton Place, Suite 2110
Boston, MA 02110

Dear Ms. Connolly:

The Seekonk Police Department remains strongly committed to the South Coast Anti-crime Task Force and acknowledges the matching requirements of the Edward Byrne Memorial Local Law Enforcement Assistance Grant Program. The Seekonk Police Department along with the other departments will designate the 50% matching funds to the South Coast Anti-Crime Task Force (SCAT). The source of the match will be drug forfeiture funds, department appropriated overtime funds, and department appropriated operating expenses.

The Seekonk Police Department will continue to dedicate personnel, communications equipment, operational supplies, and other resources as needed.

The Seekonk Police Department will continue to work in conjunction with Chief James Smith and the other SCAT communities to coordinate investigative and enforcement efforts that are essential to the control of drugs, violence, gangs, illegal firearms, organized crime, and terrorism.

If you have any further questions with regard to the involvement of the Seekonk Police Department in SCAT, please do not hesitate to contact me at 508-336-8123

Sincerely,
Chief Vito J. Scotti

Edward Byrne Memorial State and Local Law Enforcement Assistance Formula Grant    FPY 04    August 12, 2004
Memorandum of Agreement/South Coast Anti-Crime Task Force

IN WITNESS WHEREOF, the parties execute this Agreement on the ___13th___ day of August, 2004.

## TOWN OF SEEKONK

Signed By: _Chief Vito J Scotti_

Print Name: _Vito J. Scotti_

Print Title: _CHIEF OF POLICE_

Address: _1 24 TAUNTON AVENUE_

_SEEKONK, MA. 02771_

Telephone: _(508) 336-8123  (508) 336-2676 -FAX_

079

August 12, 2004

Ms. Janet Connolly, Grant Manager
Executive Office of Public Safety
Programs Division
One Ashburton Place, Suite 2110
Boston, MA 02110

Dear Ms. Connolly:

The Swansea Police Department remains strongly committed to the South Coast Anti-crime Task Force and acknowledges the matching requirements of the Edward Byrne Memorial Local Law Enforcement Assistance Grant Program. The Swansea Police Department along with the other departments will designate the 50% matching funds to the South Coast Anti-Crime Task Force (SCAT). The source of the match will be drug forfeiture funds, department appropriated overtime funds, and department appropriated operating expenses.

The Swansea Police Department will continue to dedicate personnel, communications equipment, operational supplies, and other resources as needed.

The Swansea Police Department will continue to work in conjunction with Chief James Smith and the other SCAT communities to coordinate investigative and enforcement efforts that are essential to the control of drugs, violence, gangs, illegal firearms, organized crime, and terrorism.

If you have any further questions with regard to the involvement of the Swansea Police Department in SCAT, please do not hesitate to contact me at 508-675-0760

Sincerely,
Chief George Arruda

080

IN WITNESS WHEREOF, the parties execute this Agreement on the __13TH__ day of August
,2004.

## TOWN OF SWANSEA

Signed By: _____

Print Name: _GEORGE ARRUDA_

Print Title: _CHIEF of Police_

Address: _111 BARONERS NECK ROAD_

_SWANSEA MA 02777_

Telephone: _(508) 675-0760_

**081**

AUG-18-05 THU 3:13 PM          508 995 7835                          P. 11

P. 6                    50899146600   FAX NO.          BCSO LAWENFORCEMENT   PM 3:57 THU 05 10

August 12, 2004

Ms. Janet Connolly, Grant Manager
Executive Office of Public Safety
Programs Division
One Ashburton Place, Suite 2110
Boston, MA 02110

Dear Ms. Connolly:

The  Rehoboth Police Department  remains strongly committed to the South
Coast Anti-crime Task Force and acknowledges the matching requirements of the
Edward Byrne Memorial Local Law Enforcement Assistance Grant Program.  The
Rehoboth Police  along with the other departments will designate the
50% matching funds to the South Coast Anti-Crime Task Force (SCAT).  The source of
the match will be drug forfeiture funds, department appropriated overtime funds, and
department appropriated operating expenses.

The  Rehoboth Police will continue to dedicate personnel, communications
equipment, operational supplies, and other resources as needed.
 Rehoboth Police  Department  will continue to work in conjunction with
Chief James Smith and the other SCAT communities to coordinate investigative and
enforcement efforts that are essential to the control of drugs, violence, gangs, illegal
firearms, organized crime, and terrorism.

If you have any further questions with regard to the involvement of the
Rehoboth Police Dpt.  in SCAT, please do not hesitate to contact me at
(508)252-3722  .

                              Sincerely.


                              Norman J. Miranda, Jr.
                              Chief of Police



                                                                    **082**

AUG-18-05 THU 3:13 PM            508 995 7835                          P. 14

P. 7            5089914600  .ON XAF        BCSO LAWENFORCEMENT  PM 3:57 THU 05-18-

Edward Byrne Memorial State and Local Law Enforcement Assistance Formula Grant
Memorandum of Agreement/South Coast Anti-Crime Task Force

IN WITNESS WHEREOF, the parties execute this Agreement on the _____ day of August, 2004.

## TOWN OF REHOBOTH

Signed By:

Print Name:  Norman J. Miranda Jr.

Print Title:  Chief of Police

Address:  334 Anawan Street

Rehoboth, MA 02769

Telephone: .  (508)252-3722

**083**

# EXHIBIT  B

T-2

# TAUNTON POLICE DEPT
*TAUNTON, MA*

# Master Person #: 300003729

User: rkramer          This Page Includes a Juvenile Record

## Basic Person Information

| | |
|---|---|
| Name: | **JESSE SANTOS TEIXEIRA** |
| Address: | **66 COHANNET ST 1** |
| City: | **TAUNTON** |
| State/Zip: | **MA 02780** |
| Gender: | **MALE** |
| Height: | 72    Weight: 170 |
| DOB: | 05/14/1987    Age: 17 |
| SSN #: | 017687287 |

Photo Not Available!

Taunton High School

### Physical Characteristics

| Hair Color | Eye Color | Build | Complexion |
|---|---|---|---|
| BROWN | BROWN | MEDIUM | MEDIUM |

| Scars Marks and Tattoos |
|---|
| |

### Personal Data

| Race | Ethnicity | Residency |
|---|---|---|
| BLACK | NOT OF HISPANIC ORIGIN | RESIDENT |
| **Home Phone** | **Work Phone** | **Cell Phone** |
| 5088284242 | | |
| **Marital Status** | **Spouse** | **Maiden Name** |
| UNMARRIED | | |
| **Mother** | **Mothers Maiden Name** | **Father** |
| LOUISA | SANTOS | BENJAMIN |
| **Birth City** | **Birth State** | **Citizen** |
| BROCKTON | MA | |
| **License #** | **State** | **Class** | **Date** |

087

**TAUNTON POLICE DEPT.**
*TAUNTON, MA*

# Booking Report

☒ ADULT　☐ JUVENILE

**Not For Public Release**　　Date/Time Printed: **Sun Jan 30 19:47:54 EST 2005** By: **mgrundy**

| Booking Information | | | |
|---|---|---|---|
| Agency | Booking Number | Date Of Booking | Review Status |
| TAU-PD | TTAU004003141 | 12/16/2004 16:49:50 | COMPLETED |
| Event Type | File # | ID Source | MNI # |
| ARREST | 4026247 | KNOWN TO ARRESTING OFFICER | 300003729 |

| Basic Information | |
|---|---|
| Name | |
| JESSE SANTOS TEIXEIRA | |
| Address | |
| 66 COHANNET ST 1 | |
| TAUNTON MA 02780 | |
| DOB 05/14/1987 | Age 17 |
| Social Sec # 017687287 | Gender M |



# Warrant Charges

TEIXEIRA JESSE SANTOS *Booking # : TTAU004003141*

| Warrant # 1 STANDARD WARRANT | | | | |
|---|---|---|---|---|
| Warrant: Agency TAUNTON | Dt Warrant 12/16/2004 | ID W6458415 | | |
| Adress | City | | State | Zip Code |
| Issuing Court TAUNTON | Court Type DISTRICT COURT | | Court State MA | |

| Charge # 1 | | |
|---|---|---|
| Charge Code 94C/32A/E | Charge Desc DRUG, DISTRIBUTE CLASS B c94C S32A | Counts 1 |
| Charge Notes | | |

**088**

# Bail

| Bail | | |
|---|---|---|
| **Amount** | **Bail Set By** | **Date Bail Set** |
| $3040.00 | JOSEPH COSENTINO | 12/17/2004 02:46:35 |
| **Bail Terms** | | |
| | | |
| **Paid By Self** | **Bail Payor (if Not Self)** | **Date Bail Paid** |
| Y | | |

# Event Information

| Event Information | | | |
|---|---|---|---|
| **Custody Date** | **Street #** | **Street Name** | **Apartment #** |
| 12/16/2004 16:47:00 | 66 | COHANNET ST | |
| **City** | **State** | **Zipcode** | **Common Place** |
| TAUNTON | MA | | |
| **Cross Street** | **Reporting Area** | | **Business Name** |
| | 201 | | |

# Finger Prints

| Finger Prints | | |
|---|---|---|
| **SID #** | **FBI #** | **Prints Taken?** | **Print #** |
| | | N | |
| **Print Officer** | **Date/Time Taken** | | **State Prob Num** |
| | | | |

# Authorization

| Authorization | | |
|---|---|---|
| **Booking Officer** | **Signature** | **Date/Time Entered** |
| 361 NICHOLS, E | | 12/16/2004 16:49:50 |
| **Approved By** | **Signature** | **Date/Time Approved** |
| | | |

089

# Personal Characteristics

| Personal Data / Characteristics | | |
|---|---|---|
| **Home Phone** <br> 5088284242 | **Work Phone** | **Cell Phone** |
| **Race** <br> BLACK | **Ethnicity** <br> NOT OF HISPANIC ORIGIN | **Residency** <br> RESIDENT |
| **Height** <br> 72 | **Weight** <br> 170 | **Build** <br> MEDIUM |
| **Hair Color** <br> BROWN | **Eye Color** <br> BROWN | **Complexion** <br> MEDIUM |
| **Marital Status** <br> UNMARRIED | **Spouse** | **Maiden Name** |
| **Mother** <br> LOUISA | **Mothers Maiden Name** <br> SANTOS | **Father** <br> BENJAMIN |
| **Birth City** <br> BROCKTON | **Birth State** <br> MA | **Citizen** |

| License # | Class | State | | Date |
|---|---|---|---|---|
| | | | | |

| Scars Marks and Tattoos |
|---|
| |

| **Occupation** <br> STUDENT | **Employer** <br> TAUNTON HIGH | **Employer Phone** |
|---|---|---|
| **Employer Address** <br>  TAUNTON | | |

# Medical Information

| Medical | | | |
|---|---|---|---|
| **Suicidal** <br> N | **Injured** <br> N | **Physician** | **Treatment Location** |

# Custody

| Custody | |
|---|---|
| **Status** <br> IN PROGRESS | **Location** <br> HOLDING AREA |
| **Status Date** <br> 12/16/2004 16:49:50 | **Status Updated By** <br> (361) NICHOLS, E |
| **Notes Regarding Custody** | |

**090**

| Custody | |
|---|---|
| **Status,**<br>IN CELL | **Location**<br>JUV |
| **Status Date**<br>12/16/2004 16:54:00 | **Status Updated By**<br>(361) NICHOLS, E |
| **Notes Regarding Custody** | |

| Custody | |
|---|---|
| **Status**<br>RELEASED | **Location**<br>RELEASED |
| **Status Date**<br>12/17/2004 02:46:02 | **Status Updated By**<br>(227) CASEY, R |
| **Notes Regarding Custody** | |

# Officer Roles

TEIXEIRA JESSE SANTOS *Booking # :* TTAU004003141

| Officers | | |
|---|---|---|
| **Officer** | **Role** | **Date Performed** |
| 361 NICHOLS, E | BOOKING | 12/16/2004 16:49:50 |
| 269 GRUNDY, M | ARRESTING | 12/16/2004 16:50:14 |
| 361 NICHOLS, E | SUICIDE | 12/16/2004 16:53:43 |
| 247 GALLAGHER, J | OIC | 12/16/2004 16:53:26 |

**091**

# EXHIBIT  C

# Book Memo

 

**Cin#:**     133630
**Book#:**    0413441
**Name:**     Benjamin, Chad,

**Alias:**                                    **Ssno:**   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

**Address:** 19 STANLEY AVE            **City:** TAUNTON              **State:** MA   **Zip:**

**Birth:**    BOSTON                       **DOB:** 02/25/1978                   **Age:**   26
**Height:**  511         **Foreign Born:** No      **Weight:** 190       **Complexion:** MBR
**Eyes:**    BRO              **Build:** MED      **Hair:** BLK   **Sex:** M          **Race:** BLK

**Father's Name:** ERNEST BENJAMIN              **Birthplace:** BOSTON
**Address:** DECEASED                 **City:**                  **State:**       **Zip:**

**Mother's Name(Maiden):** DOTTI WHIT          **Birthplace:**
**Address:**                          **City:**                  **State:**       **Zip:**

**Marital Status:** MA                **Number of Children:**    3
**Wife's Name(Maiden):**
**Address:** SAME AS BOOK 1           **City:**                  **State:**       **Zip:**

---Emergency Notification Information---

| | |
|---|---|
| **Name:** LATOYA | **Relation:** WIFE |
| **Address:** SAME AS BOOK 1 | **Phone:** 508-828-9406 |

**Religion:**                  **Occupation:**   TEMP AGENCY              **Education:**   8

**Veteran:** No                **Citizen:** Yes
**Physical Condition:** GOOD                        **Drug/Alcohol Dependency:**   NO
                                                    **Last Worked:** CURRENTLY

**Distinguishing Marks:** LEFT ARM SCAR TATOO LFT ARM

**Warrants:** No                      **Type of Risk:**                 **STG:** NO
**Incarceration History:** YES

--- Court Information ---

| | | |
|---|---|---|
| **DOC:**    12/17/2004  05:21 | **Court:** 631 | **Arrest Agency:** TAU |
| **Charge:**    269/10 | **Bail:** $20,040 | |
| **Cont. Date:** 12/17/2004 | **OBTN:** TTAU004003138 | |

| | | |
|---|---|---|
| **Date Rel:**  12/17/2004  09:20 | **Rel Type:** REL | **Rel Comments:** STC 1ST |

**Comments:**  NONE                                  **Booking Officer:** PJL

**005**

TAUNTON POLICE DEPT
*TAUNTON, MA*
# Booking Report

☒ ADULT  ☐ JUVENILE

**Not For Public Release**     Date/Time Printed: **Sun Jan 30 19:58:21 EST 2005 By: mgrundy**

| Booking Information | | | |
|---|---|---|---|
| Agency | Booking Number | Date Of Booking | Review Status |
| TAU-PD | TTAU004003138 | 12/16/2004 15:40:11 | COMPLETED |
| Event Type | File # | ID Source | MNI # |
| ARREST | 4026237 | KNOWN TO ARRESTING OFFICER | 400000624 |

| Basic Information | |
|---|---|
| Name | |
| CHAD ERNEST BENJAMIN | |
| Address | |
| 19 STANLEY AVE 1 | |
| TAUNTON MA 02780 | |
| DOB | Age |
| 02/25/1978 | 26 |
| Social Sec # | Gender |
| 028622530 | M |



# Charges

BENJAMIN CHAD ERNEST *Booking # :* **TTAU004003138**

| Charge # 1 | | |
|---|---|---|
| Charge Code | Charge Desc | Counts |
| 269/10/J | FIREARM, CARRY WITHOUT LICENSE c269 S10 | 1 |
| Dt Charged | Charge Notes | |
| 12/16/2004 15:42:00 | FIREARM, CARRY WITHOUT LICENSE C269 S10 | |

| Charge # 2 | | |
|---|---|---|
| Charge Code | Charge Desc | Counts |
| 94C/40 | CONSPIRACY TO VIOLATE DRUG LAW c94C S40 | 1 |
| Dt Charged | Charge Notes | |
| 12/16/2004 15:43:00 | CONSPIRACY TO VIOLATE DRUG LAW C94C S40 | |

| Charge # 3 | | |
|---|---|---|
| Charge Code | Charge Desc | Counts |
| 94C/32E/A | COCAINE, TRAFFICKING IN c94C S32E | 1 |
| Dt Charged | Charge Notes | |
| 12/16/2004 15:46:00 | COCAINE, TRAFFICKING IN C94C S32E | |

006

# Bail

| Bail | | |
|---|---|---|
| Amount | Bail Set By | Date Bail Set |
| Bail Terms | | |
| Paid By Self | Bail Payor (if Not Self) | Date Bail Paid |

# Event Information

BENJAMIN CHAD ERNEST *Booking # :* TTAU004003138

| Event Information | | | |
|---|---|---|---|
| Custody Date<br>12/16/2004 15:37:00 | Street #<br>48 | Street Name<br>COHANNET ST | Apartment # |
| City<br>TAUNTON | State<br>MA | Zipcode | Common Place |
| Cross Street | Reporting Area<br>201 | Business Name<br>EAGAN'S PACKAGE STORE | |

# Finger Prints

BENJAMIN CHAD ERNEST *Booking # :* TTAU004003138

| Finger Prints | | | |
|---|---|---|---|
| SID # | FBI # | Prints Taken?<br>N | Print # |
| Print Officer | Date/Time Taken | | State Prob Num |

# Authorization

BENJAMIN CHAD ERNEST *Booking # :* TTAU004003138

| Authorization | | |
|---|---|---|
| Booking Officer<br>361 NICHOLS, E | Signature | Date/Time Entered<br>12/16/2004 15:40:11 |
| Approved By | Signature | Date/Time Approved |

**007**

# Personal Characteristics

## Personal Data / Characteristics

| Home Phone | Work Phone | Cell Phone |
|---|---|---|
| | | |

| Race | Ethnicity | Residency |
|---|---|---|
| BLACK | NOT OF HISPANIC ORIGIN | RESIDENT |

| Height | Weight | Build |
|---|---|---|
| 511 | 190 | MEDIUM |

| Hair Color | Eye Color | Complexion |
|---|---|---|
| BLACK | BROWN | LIGHT BROWN |

| Marital Status | Spouse | Maiden Name |
|---|---|---|
| | | |

| Mother | Mothers Maiden Name | Father |
|---|---|---|
| DOROTHY | WHITE | ERNEST |

| Birth City | Birth State | Citizen |
|---|---|---|
| BOSTON | MA | |

| License # | Class | State | Date |
|---|---|---|---|
| | | | |

**Scars Marks and Tattoos**

| Occupation | Employer | Employer Phone |
|---|---|---|
| | | |

**Employer Address**

# Medical Information

## Medical

| Suicidal | Injured | Physician | Treatment Location |
|---|---|---|---|
| N | N | | |

# Custody

## Custody

| Status | Location |
|---|---|
| IN PROGRESS | HOLDING AREA |

| Status Date | Status Updated By |
|---|---|
| 12/16/2004 15:40:11 | (361) NICHOLS, E |

**Notes Regarding Custody**

**008**

| Custody | |
|---|---|
| **Status** | **Location** |
| IN CELL | MALE 1 |
| **Status Date** | **Status Updated By** |
| 12/16/2004 15:49:00 | (361) NICHOLS, E |
| **Notes Regarding Custody** | |

| Custody | |
|---|---|
| **Status** | **Location** |
| IN CELL | MALE 5 |
| **Status Date** | **Status Updated By** |
| 12/16/2004 20:02:58 | (320) CORR, P |
| **Notes Regarding Custody** | |

| Custody | |
|---|---|
| **Status** | **Location** |
| TRANSFERRED | ASH ST HOC |
| **Status Date** | **Status Updated By** |
| 12/17/2004 00:32:02 | (240) COELHO, J |
| **Notes Regarding Custody** | |

| Custody | |
|---|---|
| **Status** | **Location** |
| RELEASED | RELEASED |
| **Status Date** | **Status Updated By** |
| 12/20/2004 20:04:02 | (327) MCCABE, D |
| **Notes Regarding Custody** | |

# Officer Roles

BENJAMIN CHAD ERNEST *Booking # :* TTAU004003138

| Officers | | |
|---|---|---|
| **Officer** | **Role** | **Date Performed** |
| 361 NICHOLS, E | BOOKING | 12/16/2004 15:40:11 |
| 269 GRUNDY, M | ARRESTING | 12/16/2004 15:40:35 |
| 361 NICHOLS, E | SUICIDE | 12/16/2004 15:49:10 |
| 247 GALLAGHER, J | OIC | 12/16/2004 15:49:03 |

**009**

# EXHIBIT  D

# TAUNTON POLICE DEPT
TAUNTON, MA

# Investigative Report #4026237

**Not For Public Release**     Date/Time Printed: **Tue Jan 25 19:03:52 EST 2005 By: mgrundy**

Case Title                          Location **48 COHANNET ST**

Date/Time Reported                  Date/Time Occurred
**12/16/2004 15:37:00**                 **to**

Incident Type/Offense **COCAINE, TRAFFICKING IN c94C S32E (94C/32E/A )**

Reporting Officer **GRUNDY, M (269)**

## Persons

| Role | Name | Sex | Race | Age | DOB | Home Phone | Address |
|------|------|-----|------|-----|-----|------------|---------|
| WITNESS | DYKAS, JAMES | | | | | 508-824-7522 | TAUNTON POLICE , |
| WITNESS | RYAN, GREGG | | | | | | SWANSEA POLICE DEPT , |
| WITNESS | O'NEIL, JACK | | | | | | SOUTH COAST ANTI CRIME , |
| WITNESS | WILLIAMS, CHRISTOPHER | | | | | | TAUNTON POLICE , MA |

## Offenders

| Status | Name | Sex | Race | Age | DOB | Home Phone | Address |
|--------|------|-----|------|-----|-----|------------|---------|
| DEFENDANT | BENJAMIN, CHAD ERNEST | MALE | BLACK | 26 | 02/25/1978 | | 19 STANLEY AVE TAUNTON, MA |
| DEFENDANT | MIRANDA, EDSON | MALE | BLACK | 25 |  | | ST BROCKTON, MA |

## Narrative

On 12/ 16/04 at Approach. 1537hrs., while proceeding to 66 Cohannet street to execute an arrest warrant, with the aboved named officers, I observed two black male subjects to walk out of the driveway, one of them wearing a hood covering his head and face. I was unable to determine identity of the subject at this time. I then observed the subjects to walk into Eagan's Package Store, 48 Cohannet St. At this time we entered the Package store wearing police raid jackets and badges exposed. As I approached the two males, I observed one of them , later identified as Chad Benjamin, to place his hand over the front lower part of his sweatshirt. At this time I observed a large bulge in the area of his hands. I ordered him to put his hands up, I felt the object and immediately knew it to be a handgun. Benjamin was then brought to the floor were the weapon a Smith & Wesson .380 Cal pistol (RAE4179) loaded with six rounds, was secured. The second subject, Edson Miranda was then ordered to the floor. Both subjects appeared to be moving their hands under their bodies, Benjamin was then handcuffed and turned over, at this time I discovered a large glassine bag containing 25 smaller glassine bags containing crack cocaine. A field test by Det. Williams showed a positive reaction to crack cocaine.

Chad Benjamin will be charged with : Unlawfull possession of a firearm possession of a firearm during the commision of a felony ,Trafficking in cocaine

Edson Miranda will be charged with : Trafficking in class B cocaine.

**001**

The cocaine was weighed by this officers the total being 15 grams.

Respectfully Submitted,

Det. Sgt. Michael Grundy

Reporting Officer  GRUNDY, M

Signature

Reviewed By        GRUNDY, M

Signature

**002**

# EXHIBIT  E

```
                                                                          *
          ****** WARNING ******* WARNING ********                         *
                                                                          *
     THIS INFORMATION IS CORI.  IT IS NOT SUPPORTED BY FINGERPRINTS.      *
PLEASE CHECK THAT THE NAME REFERENCED BELOW MATCHES THE NAME AND DATE OF BIRTH*
OF THE PERSON REQUESTED.                                                   *
                                                                          *
**********************************************************************************
```

```
          **********     COMMONWEALTH OF MASSACHUSETTS     **********
                         CRIMINAL HISTORY SYSTEMS BOARD

                    *** PERSONS COURT SUMMARY ***
```

NAM: BENJAMIN, CHAD              FORMAL-NAM: CHAD              PCF: 00001756491
DOB: 02/25/78    SEX: M  RAC: B     POB: DORCHESTER MA         SSN: 028622530
MOM:DOROTHY WHITE         POP:ERNEST       HGT: 511 WGT: 180 HAI: BLK EYE: BRO
ADDRESS: 19 STANLEY AVE #1 TAUNTON MA


**** ***** ***** ***** ADULT APPEARANCES ***** ***** ***** *****

ARRAIGNMENT: (001)
 ARG-DATE: 12/17/04 PD: TAU COURT: TAUNTON DISTRICT      DKT#:    0431CR4829A
 OFF:  POSS FIREARM W/O PERMIT                           FIR POSS WO PERM
 DISP: C 3/24/05                                         STATUS: O   WPD:


ARRAIGNMENT: (002)
 ARG-DATE: 12/17/04 PD: TAU COURT: TAUNTON DISTRICT      DKT#:    0431CR4829B
 OFF:  FIREARM VIOLATION(SPECIFY)     USE IN FELONY      FIR
 DISP: C 3/24/05                                         STATUS: O   WPD:


ARRAIGNMENT: (003)
 ARG-DATE: 12/17/04 PD: TAU COURT: TAUNTON DISTRICT      DKT#:    0431CR4829C
 OFF:  TRAFFICKING CONT SUB          B                   CSA TRAFF
 DISP: C 3/24/05                                         STATUS: O   WPD:


ARRAIGNMENT: (004)
 ARG-DATE: 12/17/04 PD: TAU COURT: TAUNTON DISTRICT      DKT#:    0431CR4829D
 OFF:  TRAFFICKING CONT SUB          B                   CSA TRAFF
 DISP: C 3/24/05                                         STATUS: O   WPD:


**023**

ARRAIGNMENT: (005)
 ARG-DATE: 12/12/00 PD: BRO COURT: BROCKTON DISTRICT     DKT#:    0015CR009628A
 OFF:  FIREARM VIOLATION(SPECIFY)     UNL POSS           FIR
 DISP: C 1/11/01 (JT) 5/4/01 G 18MO SPS 6MO CMTD BAL SS  STATUS: C   WPD:

```
RRAIGNMENT: (006)
ARG-DATE: 12/12/00 PD: BRO COURT: BROCKTON DISTRICT      DKT#:  0015CR009628B
OFF:   FIREARM VIOLATION(SPECIFY)      UNL POSS         FIR
DISP: C 1/11/01 (JT) 5/4/01 G 18MO SPS 6MO CMTD BAL SS  STATUS: C   WPD:
      5/2/03 TERM


RRAIGNMENT: (007)
ARG-DATE: 12/12/00 PD: BRO COURT: BROCKTON DISTRICT      DKT#:  0015CR009628C
OFF:   POSS TO DISTRIBUTE CLASS B                       CSA POSS DIST B
DISP: C 1/11/01 (JT) 5/4/01 DISM                        STATUS: C   WPD:


RRAIGNMENT: (008)
ARG-DATE: 12/12/00 PD: BRO COURT: BROCKTON DISTRICT      DKT#:  0015CR009628D
OFF:   POSS CLASS B CONT SUB                            CSA POSS B
DISP: C 1/11/01 (JT) 5/4/01 DISM                        STATUS: C   WPD:


RRAIGNMENT: (009)
ARG-DATE: 12/12/00 PD: BRO COURT: BROCKTON DISTRICT      DKT#:  0015CR009628E
OFF:   POSS TO DISTRIBUTE CLASS D                       CSA POSS DIST D
DISP: C 1/11/01 (JT) 5/4/01 DISM                        STATUS: C   WPD:


RRAIGNMENT: (010)
ARG-DATE: 12/12/00 PD: BRO COURT: BROCKTON DISTRICT      DKT#:  0015CR009628F
OFF:   POSS CLASS D CONT SUB                            CSA POSS D
DISP: C 1/11/01 (JT) 5/4/01 DISM                        STATUS: C   WPD:


RRAIGNMENT: (011)
ARG-DATE: 10/30/00 PD: QUI COURT: QUINCY DISTRICT        DKT#:  0056CR006578A
OFF:   OPER UND INFL OF LIQ                             111A
DISP: 12/19/00 DF WAR 2/12/01 D/R 3/29/01 (JT) 6/29/01  STATUS: C   WPD:
      NG


RRAIGNMENT: (012)
ARG-DATE: 10/30/00 PD: QUI COURT: QUINCY DISTRICT        DKT#:  0056CR006578B
OFF:   OPER NEGLIGENTLY                                 MV OP NEG
DISP: 12/19/00 DF 2/12/01 D/R 3/29/01 (JT) 6/29/01 G    STATUS: C   WPD:
      6MO CMTD VWF F/A 0015CR009628


RRAIGNMENT: (013)
ARG-DATE: 10/30/00 PD: QUI COURT: QUINCY DISTRICT        DKT#:  0056CR006578E
OFF:   LEAVING SCENE:PROPERTY DAMGE                     113A
DISP: 12/19/00 DFD/R 3/29/01 (JT) 6/29/01 G PROB 11/2/03 STATUS: C   WPD:
      REST VN 4/28/03 VOP WAR 5/15/03 D/R PD TERM
```

**024**

RRAIGNMENT: (014)
ARG-DATE: 06/05/00 PD: BRO COURT: BROCKTON DISTRICT       DKT#: 0015CR004144A
OFF: POSS CLASS B CONT SUB          COCAINE               CSA POSS B
DISP: C 6/29/00 DISM                                      STATUS: C    WPD:


RRAIGNMENT: (015)
ARG-DATE: 06/05/00 PD: BRO COURT: BROCKTON DISTRICT       DKT#: 0015CR004144B
OFF: RESISTING ARREST                                     RESIST ARST
DISP: C 6/29/00 DISM                                      STATUS: C    WPD:


RRAIGNMENT: (016)
ARG-DATE: 05/30/00 PD: BRO COURT: PLYMOUTH SUPERIOR       DKT#:        103389
OFF: ROBBERY                        UNARMED               ROB
DISP: C 6/22 7/10/02 DIR V/NG                             STATUS: C    WPD:


RRAIGNMENT: (017)
ARG-DATE: 05/30/00 PD: BRO COURT: PLYMOUTH SUPERIOR       DKT#:        103390
OFF: ASSAULT DANGEROUS WEAPON                             ASLT DW
DISP: C 6/22 7/10/02 DIR V/NG                             STATUS: C    WPD:


RRAIGNMENT: (018)
ARG-DATE: 05/30/00 PD: BRO COURT: PLYMOUTH SUPERIOR       DKT#:        103391
OFF: ASSAULT AND BATTERY                                  A&B
DISP: C 6/22 7/10/02 DIR V/NG                             STATUS: C    WPD:


RRAIGNMENT: (019)
ARG-DATE: 05/02/00 PD: BRO COURT: BROCKTON DISTRICT       DKT#: 0015CR002468A
OFF: ARMED ROBBERY                                        ROB ARM
DISP: C 6/2/00 DISM INDICT                                STATUS: C    WPD:


RRAIGNMENT: (020)
ARG-DATE: 05/02/00 PD: BRO COURT: BROCKTON DISTRICT       DKT#: 0015CR002468B
OFF: ASSAULT DANGEROUS WEAPON                             ASLT DW
DISP: C 6/2/00 DISM INDICT                                STATUS: C    WPD:


RRAIGNMENT: (021)
ARG-DATE: 08/26/99 PD: BRO COURT: BROCKTON DISTRICT       DKT#: 9915CR004815A
OFF: OPERATING AFTER SUSPEND REG                          114C-SUS
DISP: C 9/28/99 PTP 12/28/99 DISM                         STATUS: C    WPD:

025

RRAIGNMENT: (022)
ARG-DATE: 02/02/99 PD: BRO COURT: BROCKTON DISTRICT       DKT#: 9915CR000777A
OFF: A&B DANGEROUS WEAPON                                 A&B DW

DISP: C 2/23/99 CWOF 2/24/00 9/28/99 VOP C 2/24/00 DISM   STATUS: C   WPD:

RRAIGNMENT: (023)
 ARG-DATE: 02/02/99 PD: BRO COURT: BROCKTON DISTRICT      DKT#:   9915CR000777B
 OFF:  ASSAULT AND BATTERY                         A&B
 DISP: C 2/23/99 G PROB 2/24/00 9/28/99 VOP C2/24/00 TERM STATUS: C   WPD:


RRAIGNMENT: (024)
 ARG-DATE: 02/02/99 PD: BRO COURT: BROCKTON DISTRICT      DKT#:   9915CR000777C
 OFF:  DISORDERLY CONDUCT                          DIS COND
 DISP: C 2/23/99 G PROB 2/24/00 9/28/99 VOP C2/24/00 TERM STATUS: C   WPD:


RRAIGNMENT: (025)
 ARG-DATE: 07/02/98 PD: BRO COURT: BROCKTON DISTRICT      DKT#:   9815CR005083A
 OFF:  DISTURBING THE PEACE(BREACH)                DP
 DISP: G FILE                                      STATUS: C   WPD:


RRAIGNMENT: (026)
 ARG-DATE: 12/05/95 PD: BRO COURT: BROCKTON DISTRICT      DKT#:   9515CR010791A
 OFF:  DISTRIBUTE/DISPENSE CLASS B                 CSA DIST B
 DISP: C 2/6/96 G 1DA CMTD                         STATUS: C   WPD:


RRAIGNMENT: (027)
 ARG-DATE: 12/05/95 PD: BRO COURT: BROCKTON DISTRICT      DKT#:   9515CR010791B
 OFF:  DISTRIBUTE/DISPENSE CLASS B                 CSA DIST B
 DISP: C 2/6/96 G 1DA CMTD                         STATUS: C   WPD:


RRAIGNMENT: (028)
 ARG-DATE: 12/05/95 PD: BRO COURT: BROCKTON DISTRICT      DKT#:   9515CR010791C
 OFF:  CONSPIRACY TO VIO CONT SUB ACT              CSA CONSP
 DISP: C 2/6/96 G 1DA CMTD                         STATUS: C   WPD:


RRAIGNMENT: (029)
 ARG-DATE: 12/05/95 PD: BRO COURT: BROCKTON DISTRICT      DKT#:   9515CR010791D
 OFF:  CONTROL SUBSTANCE SCHOOL                    CSA SCHOOL
 DISP: C 2/6/96 G 2YR CMTD                         STATUS: C   WPD:


**** ***** ***** **** END OF ADULT APPEARANCES ***** ***** ***** *****

EQUESTED BY: SHEILA O'HARA
MPLETED BY: O'HARA, SHEILA
     AGENCY: US ATF - BOSTON                                **026**

ᴀM: BENJAMIN, CHAD                    PCF: 00001756491 DOB: 02/25/78
******************************************************************************
ʼ* THE FOLLOWING ARRAIGNMENTS ARE JUVENILE APPEARANCES ***
ʼ* PLEASE CHECK THE NEWS FILE FOR DISSEMINATION GUIDELINES ***
******************************************************************************

ʀRAIGNMENT: (001)
 ARG-DATE: 08/12/94 PD: BOS COURT: DORCHESTER JUVENILE      DKT#:    9407JV0534A
 OFF:  POSS OF AMMUNITION                              POSS AMMO
 DISP: C 9/8/94 ADJ DEL CMTD DYS                       STATUS: C   WPD:


ʀRAIGNMENT: (002)
 ARG-DATE: 08/12/94 PD: BOS COURT: DORCHESTER JUVENILE      DKT#:    9407JV0534B
 OFF:  POSS FIREARM W/O PERMIT                         FIR POSS WO PERM
 DISP: C 9/8/94 ADJ DEL CMTD DYS                       STATUS: C   WPD:


ʀRAIGNMENT: (003)
 ARG-DATE: 08/12/94 PD: BOS COURT: DORCHESTER JUVENILE      DKT#:    9407JV0534C
 OFF:  ROBBERY                        ARM              ROB
 DISP: C 9/8/94 ADJ DEL CMTD DYS                       STATUS: C   WPD:


ʀRAIGNMENT: (004)
 ARG-DATE: 08/12/94 PD: BOS COURT: DORCHESTER JUVENILE      DKT#:    9407JV0534D
 OFF:  ASSAULT DANGEROUS WEAPON        GUN             ASLT DW
 DISP: C 9/8/94 ADJ DEL CMTD DYS                       STATUS: C   WPD:


ʀRAIGNMENT: (005)
 ARG-DATE: 08/12/94 PD: BOS COURT: DORCHESTER JUVENILE      DKT#:    9407JV0534E
 OFF:  ATTEMPT TO COMMIT CRIME                         ATT COM CRIME
 DISP: C 9/8/94 ADJ DEL CMTD DYS                       STATUS: C   WPD:


ʀRAIGNMENT: (006)
 ARG-DATE: 04/15/93 PD:      COURT: BROCKTON JUVENILE       DKT#:    9315JKV0310
 OFF:  DISTURBING THE PEACE(BREACH)                    DP
 DISP: C 4/23/93 DISM                                  STATUS: C   WPD:


ʀRAIGNMENT: (007)
 ARG-DATE: 10/13/92 PD:      COURT: BROCKTON JUVENILE       DKT#:    9215JV0863
 OFF:  A&B DANGEROUS WEAPON             SHODFOOT       A&B DW
 DISP: C 10/26/92  DYS SS 10/25/93 4/15/93 VTP C 4/23/93 STATUS: C   WPD:
       CMTD DYS

                                                              **027**

RRAIGNMENT: (008)
ARG-DATE: COURT: BROCKTON JUVENILE                    DKT#:    9215JV0863A
OFF:  ASSAULT AND BATTERY                             A&B
DISP: C 10/26/92 DYS SS 10/25/93 4/15/93 VTP C 4/23/93    STATUS: C    WPD:
      CMTD DYS


RRAIGNMENT: (009)
ARG-DATE: 10/05/92 PD:    COURT: BROCKTON JUVENILE       DKT#:    9215JV0845
OFF:  A&B DANGEROUS WEAPON        SHJODFOOT              A&B DW
DISP: C 5/28/93 DISM                                     STATUS: C    WPD:


RRAIGNMENT: (010)
ARG-DATE: 10/05/92 PD:    COURT: BROCKTON JUVENILE       DKT#:    9215JV0845A
OFF:  ASSAULT AND BATTERY                                A&B
DISP: C 5/28/93 DISM                                     STATUS: C    WPD:


RRAIGNMENT: (011)
ARG-DATE: 04/23/92 PD:    COURT: BROCKTON JUVENILE       DKT#:    9215JV0399
OFF:  OPEN AND GROSS               LEWD                  O&G
DISP: C 6/28/93 DISM                                     STATUS: C    WPD:


RRAIGNMENT: (012)
ARG-DATE: 04/23/92 PD:    COURT: BROCKTON JUVENILE       DKT#:    9215JV0399A
OFF:  CARRYING DANGEROUS WEAPON      KNIFE               DWC
DISP: C 6/28/93  DISM                                    STATUS: C    WPD:


RRAIGNMENT: (013)
ARG-DATE: 04/23/92 PD:    COURT: BROCKTON JUVENILE       DKT#:    9215JV0399B
OFF:  SHOPLIFTIN                                         SHOPLIFT
DISP: C 6/28/93 DISM                                     STATUS: C    WPD:


RRAIGNMENT: (014)
ARG-DATE: 04/23/92 PD:    COURT: BROCKTON JUVENILE       DKT#:    9215JV0399C
OFF:  DISORDERLY PERSON                                  DIS PERS
DISP: C 6/28/93  DISM                                    STATUS: C    WPD:


RRAIGNMENT: (015)
ARG-DATE: 04/18/89 PD:    COURT: BROCKTON JUVENILE       DKT#:    8815JV1846
OFF:  INDECENT A&B ON CHILD          UNDER 14YRS OLD     A&B IND CH
DISP: DF 3/25/92 DF DISM                                 STATUS: C    WPD:


**028**

**** ***** ***** **** END OF JUVENILE APPEARANCES ***** ***** ***** *****

EQUESTED BY: SHEILA O'HARA

| REF | NAME | DOB | SX | RC | EYE | HAI | HGT | WGT | DEA |
|-----|------|-----|----|----|-----|-----|-----|-----|-----|
| W4450072 | BENJAMIN MARK | 122279 | M | U | XXX | XXX | 000 | 000 | LMTC |
| W6517673 | BENJAMIN ERIC | 012579 | M | W | BRO | BRO | 510 | 170 | LMTC |
| W6523420 | BENJAMIN LABON | 072279 | M | B | BRO | BRO | 506 | 120 | LMTC |
| W5538616 | BENJAMIN PETERSON | 082379 | M | B | BLK | BLK | 503 | 130 | LMTC |
| W6465577 | BENJAMIN PHILLIP | 092575 | M | B | BRO | BLK | 509 | 160 | LMTC |
| W3790707 | BENJAMIN WILLIAM K | 011276 | M | B | XXX | XXX | 000 | 000 | LMTC |
| W3736335 | BENJAMIN ERIC D | 033076 | M | B | BLK | BLK | 600 | 145 | LMTC |
| W5870357 | BENJAMIN WILNER | 022377 | M | B | BLK | BLK | 507 | 145 | LMTC |
| W6338653 | BENJAMIN MICHAEL | 122282 | M | W | HAZ | BRO | 511 | 155 | LMTC |
| W6506388 | BENJAMIN ALWAYNE D | 062674 | M | B | BRO | BLK | 511 | 210 | LMTC |
| W6213619 | BENJAMIN OLIN | 040272 | M | W | BRO | BRO | 511 | 160 | LMTC |
| W5862350 | BENJAMIN RALPH | 103184 | M | B | BRO | BLK | 504 | 130 | LMTC |
| W5878783 | BENJAMIN MICHAEL P | 012684 | M | W | BRO | BRO | 506 | 150 | LMTC |
| W4307405 | BENJAMIN ANTONIO | 091671 | M | B | BRO | BLK | 510 | 155 | LMTC |
| W6460415 | BENJAMIN PAUL M II | 032071 | M | W | BRO | BRO | 600 | 230 | LMTC |

LARS


JIS 476121   03/22/2005 1149   S0751/6028.
N.
N01VPQ0004600
AATFBSS0


O NCIC WANT S0C/028622530
O NCIC WANT NAM/BENJAMIN, CHAD D0B/19780225 RAC/U SEX/M.>-<
JIS 476121   03/22/2005 1149   S1028/6028.
                   MASSACHUSETTS REGISTRY OF MOTOR VEHICLES      03/22/05 1149
-- DRIVER  INQUIRY ----
KEYS USED:           BENJAMIN      CHAD                   022578
LN:028622530              STATUS:REV/RRV    SOC: 028622530
DL STATUS:          REASON: HABITUAL TRAF OFFNDR
NAME L: BENJAMIN       F: CHAD       M: ERNEST        DOB: 02/25/1978
 SEX: M     HGT: 6 01
RESIDENCE:                CITY:              ST:    ZIP:
 BLDG/APT:
MAIL ADDR: 19 STANLEY AVE      CITY: TAUNTON      ST: MA ZIP: 02780-3014
 BLDG/APT: # 1
DRIVERS ED: N    MAB REVIEW: N    MILITARY: N
PREVIOUS NAME  L:    F:    M:
RESTRICTIONS:          TIME:      TO
YPE   CLASS  ISSUE DATE  EXP DATE
      D      03/23/2004  03/23/2006
             03/09/2005  03/09/2010      ID ONLY

                                                  **029**

```
JIS 476121   03/22/2005 1149   S1028/6028.
                MASSACHUSETTS REGISTRY OF MOTOR VEHICLES      03/22/05 1149
--- DRIVER INQUIRY --- ADDITIONAL INFORMATION ---
KEYS USED:                              BENJAMIN      CHAD 022578

LN: 028622530                              SEX: M  HGT: 6 01
NAME L: BENJAMIN        F: CHAD      M: ERNEST      DOB: 02/25/1978

PREVIOUS NAMES AND DATES OF BIRTH



PREVIOUS OLN DATA  -----------------------------------------ENDORSEMENTS
OLN                    ST ISS DATE   EXP DATE    CLASS RSN   1  2  3  4  5

S20095208
```

```
JIS 476121   03/22/2005 1149   S1028/6028.
                MASSACHUSETTS REGISTRY OF MOTOR VEHICLES      03/22/05 1149
                -----------   DRIVER HISTORY    -----------
KEYS USED:              BENJAMIN      CHAD                  022578

OLN: 028622530              ST: MA                    PAGE 01
NAME    L: BENJAMIN      F: CHAD      M: ERNEST   DOB: 02/25/1978
CORP/CO NAME:
STATUS: REV/RRV      FOLDER:

ENTRY     INCIDENT                DESCRIPTION            CRT FINDINGS
DATE      DATE                                              DATE
9/20/04   09/20/04   REVOCATION HABITUAL TRAF OFFNDR  4 YEARS   09/21/04
8/19/04   08/19/04   HEARING HABITUAL TRAF OFFNDR REVOKE
8/19/04   06/27/04   OPERATOR UNLICENSED RAYNHAM G         031 08/12/04
8/19/04   06/27/04   SPEEDING RAYNHAM R                    031 08/12/04
7/01/04              CERT TO RAYNHAM PD
3/23/04   03/23/04   REINSTATED CHEM TEST REFUSAL FEE PAID     03/23/04
3/23/04   03/23/04   EXPIRATION LEAVE SCENE PROP DAM FEE PAID  03/23/04
8/10/02   08/10/02   SUSP PEND REIN FEE LEAVE SCENE PROP DAM   08/10/02
8/10/02   08/10/02   EXPIRATION LEAVE SCENE PROP DAM  PEC QUINCY 08/10/02
8/01/01   07/31/01   HEARING HABITUAL TRAF OFFNDR NO ACTION    08/01/01
7/31/01   07/31/01   REVOCATION LEAVE SCENE PROP DAM  1 YEAR   08/10/01
                -----------  NEXT PAGE COMING UP  -----------
```

**030**

JIS 476121    03/22/2005 1149    S1028/6028.
            MASSACHUSETTS REGISTRY OF MOTOR VEHICLES    03/22/05 1149
            ----------    DRIVER HISTORY    ----------
KEYS USED:        BENJAMIN        CHAD                022578

OLN: 028622530                ST: MA                        PAGE 02
NAME    L: BENJAMIN        F: CHAD        M: ERNEST    DOB: 02/25/1978
CORP/CO NAME:
STATUS: REV/RRV        FOLDER:

| ENTRY DATE | INCIDENT DATE | DESCRIPTION | CRT | FINDINGS DATE |
|---|---|---|---|---|
| 7/31/01 | 10/28/00 | LEAVE SCENE PROP DAM QUINCY G | 056 | 06/29/01 |
| 7/31/01 | 10/28/00 | FAILURE TO STOP QUINCY R | 056 | 06/29/01 |
| 7/31/01 | 10/28/00 | OPERATOR UNLICENSED QUINCY G | 056 | 06/29/01 |
| 7/31/01 | 10/28/00 | REFUSE OBEY POLICE QUINCY G | 056 | 06/29/01 |
| 7/31/01 | 10/28/00 | REG STKR NO DISPLAY QUINCY NR | 056 | 06/29/01 |
| 7/31/01 | 10/28/00 | RT OF WAY INTERSECTN QUINCY R | 056 | 06/29/01 |
| 7/31/01 | 10/28/00 | DRIVING TO ENDANGER QUINCY G | 056 | 06/29/01 |
| 7/31/01 | 10/28/00 | IMPROPER EQUIPMENT QUINCY NR | 056 | 06/29/01 |
| 7/31/01 | 10/28/00 | DWI LIQUOR QUINCY NG | 056 | 06/29/01 |
| 5/22/01 | 12/05/00 | POSSESS COCAIN/INTNT BROCKTON DI | 015 | 05/04/01 |
| 5/22/01 | 12/05/00 | ILLEGAL POSS CLASS B BROCKTON DI | 015 | 05/04/01 |

            ----------  NEXT PAGE COMING UP  ----------

JIS 476121    03/22/2005 1149    S1028/6028.
            MASSACHUSETTS REGISTRY OF MOTOR VEHICLES    03/22/05 1149
            ----------    DRIVER HISTORY    ----------
KEYS USED:        BENJAMIN        CHAD                022578

OLN: 028622530                ST: MA                        PAGE 03
NAME    L: BENJAMIN        F: CHAD        M: ERNEST    DOB: 02/25/1978
CORP/CO NAME:
STATUS: REV/RRV        FOLDER:

| ENTRY DATE | INCIDENT DATE | DESCRIPTION | CRT | FINDINGS DATE |
|---|---|---|---|---|
| 5/22/01 | 12/05/00 | POSSESS CLS D/INTENT BROCKTON DI | 015 | 05/04/01 |
| 5/22/01 | 12/05/00 | ILLEGAL POSS CLASS D BROCKTON DI | 015 | 05/04/01 |
| 3/13/01 | 03/13/01 | SUSP PEND REIN FEE CHEM TEST REFUSAL | | 03/13/01 |
| 3/13/01 | 03/13/01 | EXPIRATION CHEM TEST REFUSAL  PEC QUINCY | | 03/13/01 |
| 0/30/00 | 10/30/00 | SUSPENSION CHEM TEST REFUSAL 120 DAYS | | 11/13/00 |
| 0/30/00 | 10/28/00 | CHEM TEST REFUSAL QUINCY | | |
| 7/20/00 | 06/02/00 | ILLEGAL POSS CLASS B BROCKTON DI | 015 | 06/29/00 |
| 1/06/00 | 07/05/99 | OPERATOR UNLICENSED BROCKTON DI | 015 | 12/28/99 |
| 1/06/00 | 07/05/99 | REG SUSPEND/REVOKED BROCKTON DI | 015 | 12/28/99 |
| 1/06/00 | 07/05/99 | DPW STATE HWAY REGS BROCKTON DI | 015 | 12/28/99 |

            ----------    END OF HISTORY    ----------

*031*

```
     ****  INTERSTATE IDENTIFICATION INDEX QH QUERY  ****
  PUR/   C    ATN/    OHARA
             AUTH/   HOOVER
             OPR/    OHARA


  SUBJECT INFORMATION:
  NAM/    BENJAMIN, CHAD                  SOC/

  RAC/    U    SEX/    M    DOB/    19780225


  FBI/              SID/                    MNU/
```

JIS 476806    03/22/2005 1151    S1028/6028.


```
********************************************************************

***                  ************************             ***

***  DATE  032205      EST  1151      DEA  MAATFBSS0       ***

***                QH  COMPLETED                          ***


********************************************************************
```

> <

**032**

J.
;01III QUERY

AATFBSS0
NQUIRY ON NAM/BENJAMIN,CHAD SEX/M RAC/U DOB/19780225 PUR/C

| AME | FBI NO. | INQUIRY DATE |
|---|---|---|
| ENJAMIN,CHAD | 298115WA3 | 2005/03/22 |

EX RACE  BIRTH DATE  HEIGHT  WEIGHT  EYES  HAIR  BIRTH PLACE          PHOTO
   B     1978/02/25   511     204    .BRO  BLK   MASSACHUSETTS          Y

INGERPRINT CLASS       PATTERN CLASS
4 TT 03 06 07          RS LS RS RS RS AU AU LS RS LS
A TT 04 09 07          AU WU             LS    LS
                          RS

LIAS NAMES
ENJAMIN,CHAD E                 BENJAMIN,CHAD ERNEST

CARS-MARKS-
ATTOOS           SOCIAL SECURITY
AT L ARM         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
AT L WRS
AT R ARM
AT R WRS

DENTIFICATION DATA UPDATED 2005/03/17

HE CRIMINAL HISTORY RECORD IS MAINTAINED AND AVAILABLE FROM THE
OLLOWING:
FBI              - FBI/298115WA3


L02*10AB64
AATFBSS0
HE RECORD(S) CAN BE OBTAINED THROUGH THE INTERSTATE IDENTIFICATION
NDEX BY USING THE APPROPRIATE NCIC TRANSACTION.


ND.>-<

**033**

JIS 477239   03/22/2005 1152   S1028/6028.

```
         **** INTERSTATE IDENTIFICATION INDEX QR QUERY
    PUR/   C      ATN/    OHARA
                  AUTH/   HOOVER
                  OPR/    OHARA
UBJECT INFORMATION:
AM/   BENAJMIN, CHAD
      FBI/   298115WA3       SID/

      MAILING ADDRESS:
      DPT/   BUREAU OF ATF
      BLD/   ONEILL FEDERAL BUILDING
      ADR/   10 CAUSEWAY STREET
      CIS/   BOSTON, MA
      ZIP/   02222
```

JIS 477239   03/22/2005 1152   S1028/6028.

```
*****************************************************************************

  ***                    ************************                    ***

  ***   DATE   032205      EST   1152      DEA   MAATFBSS0            ***

  ***                  QR   COMPLETED                                ***

*****************************************************************************
```

> <

**034**

JIS 477239   03/22/2005 1152   S0751/6028.
N.
_01III QUERY
_ATFBSS0
HIS INTERSTATE IDENTIFICATION INDEX RESPONSE IS THE RESULT OF YOUR
_CORD REQUEST FOR FBI/298115WA3. THE FOLLOWING WILL RESPOND TO YOUR

JIS 477239   03/22/2005 1152   S0753/6028.
L.
R.WVFBINF00
9:53 03/22/2005 12254
9:53 03/22/2005 07824 MAATFBSS0
XT
DR/2L01
TN/OHARA
********************** CRIMINAL HISTORY RECORD ***********************

ata As Of           2005-03-22

************************** INTRODUCTION ***************************

his rap sheet was produced in response to the following request:

BI Number            298115WA3
urpose Code          C
ttention             OHARA

he information in this rap sheet is subject to the following caveats:

his record is based only on the FBI number in your request-298115WA3.
ecause additions or deletions may be made at any time, a new copy
hould be requested when needed for subsequent use. (US; 2005-03-22)
ll arrest entries contained in this FBI record are based on
ingerprint comparisons and pertain to the same individual. (US;
005-03-22)
he use of this record is regulated by law. It is provided for official
se only and may be used only for the purpose requested. (US;
005-03-22)

************************** IDENTIFICATION ***************************

ubject Name(s)

ENJAMIN, CHAD
ENJAMIN, CHAD E   (AKA)
ENJAMIN, CHAD ERNEST   (AKA)

ubject Description

BI Number
98115WA3
ocial Security Number
28622530

**035**

ex                   Race
ale                  Black

eight                Weight               Date of Birth
'11"                 204 Pounds           1978-02-25

air Color            Eye Color            Fingerprint Pattern
lack (1994-09-01)    Brown (1994-09-01)   04TT030607AATT040907 (FPC)
         AU RS RS RS RS AU LS LS LS LS (Other)

| ode | Description, Comments, and Images |
|---|---|
| CIC | TAT L WRS; TATTOO ON LEFT WRIST (WVFBINF00) |
| C | |
| C | TAT R ARM; TATTOO ON RIGHT ARM (WVFBINF00) |
| CIC | TAT R WRS; TATTOO ON RIGHT WRIST (WVFBINF00) |
| CIC | TAT L ARM; TATTOO ON LEFT ARM (WVFBINF00) |

| lace of Birth | Citizenship |
|---|---|
| A | US |

hoto Images
ype

| ther | Arresting agency has photo associated with arrest date of 1994/08/12 (MA0130100) |
|---|---|
| ther | FBI has one photo associated with arrest date of 2005/03/17 (WVFBINF00) |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*   CRIMINAL HISTORY   \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

============================ Cycle 001 ============================
arliest Event Date     1994-08-12
--------------------------------------------------------------------
rrest Date             1994-08-12
rrest Case Number      G6180
rresting Agency        POLICE DEPARTMENT BOSTON; MA0130100;
ubject's Name          BENJAMIN, CHAD
harge                  01
   Charge Description  ARMED ROBBERY GUN
          Severity     Unknown

============================ Cycle 002 ============================
arliest Event Date     2001-05-15
--------------------------------------------------------------------
rrest Date             2001-05-15
rresting Agency        BUR CRIM INVEST PLYMOUTH; MA012013Y;
ubject's Name          BENJAMIN, CHAD E (AKA)
harge                  01
   Charge Description  140:129C|POSSESS FIREARM: NO I.D.
          Severity     Unknown

============================ Cycle 003 ============================
arliest Event Date     2001-08-21
--------------------------------------------------------------------
rrest Date             2001-08-21
rrest Case Number      201981
rresting Agency        SHERIFF'S OFFICE DEDHAM; MA0110000;
ubject's Name          BENJAMIN, C
AD ERNEST (AKA)
harge                  01
   Charge Description  090:024:2A.1|OPERATE MV RECKLESSLY/NEGLIGENTLY,
                       ENDAN
          Severity     Unknown                                    **036**

============================ Cycle 004 ============================
arliest Event Date     2005-03-17

```
rrest Date
rresting Agency         USM BOSTON; MAUSM0100;
ubject's Name           BENJAMIN, CHAD ERNEST (AKA)
harge                   01
   Charge Description   5299 - WEAPON OFFENSE
            Severity    Unknown
-----------------------------------------------------------------
ourt Disposition        (Cycle 004)
ourt Agency             NOT-KNOWN
harge                   01
        Offense Date    2005-03-17
   Charge Description   5299 - WEAPON OFFENSE
            Severity    Unknown
-----------------------------------------------------------------
entencing               (Cycle 004)
entencing Agency        NOT-KNOWN
            Sentence    NOT YET DISPOSED


*********************   INDEX OF AGENCIES   **************************

gency                   FBI-CJIS DIV-CLRKSBG CLARKSBURG; WVFBINF00;
ailing Address           1000 CUSTER HOLLOW RD
                        CLARKSBURG, WV 26306

-----------------------------------------------------------------
gency                   POLICE DEPARTMENT BOSTON; MA0130100;
ailing Address          ROOM 149-SOUTH 1 SCHROEDER PLAZA
                        BOSTON, MA 021202014

-----------------------------------------------------------------
gency                   BUR CRIM INVEST PLYMOUTH; MA012013Y;
ailing Address          PLYMOUTH COUNTY 24 LONG POND RD
                        PLYMOUTH, MA 023602606

-----------------------------------------------------------------
gency                   SHERIFF'S OFFICE DEDHAM; MA0
10000;
ailing Address          200 WEST STREET PO BOX 149
                        DEDHAM, MA 02027

-----------------------------------------------------------------
gency                   USM BOSTON; MAUSM0100;
ailing Address          STE 500 1 COURTHOUSE WAY
                        BOSTON, MA 022103002


 * * END OF RECORD * * *
```

037